**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW J. HARTMAN, | ) | CASE NO. 1:18-cv-02196 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| SHERIFF THOMAS MILLER, *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondents. | ) | **AND ORDER** |

On September 24, 2018, Petitioner Matthew J. Hartman (Petitioner or Hartman), then represented by counsel, filed an "Emergency Petition" pursuant to 28 U.S.C. § 2241 alleging that the State of Ohio was exposing him to "double jeopardy" while awaiting a third trial on the same charges.[1] (R. 1). An emergency motion filed by Petitioner seeking to stay the trial was denied. (R. 3 & 5).

On August 22, 2019, Respondents filed a motion to dismiss the petition as moot (R. 11), which Hartman opposed. (R. 12). On February 21, 2020, the District Court denied Respondent's motion to dismiss, and converted the petition into a § 2254 petition. (R. 13). The court found that it "may presume that Hartman continues to suffer collateral consequences from his conviction …." (R. 13, PageID# 1026). However, the court noted that Hartman cannot receive the relief he

---

[1] Counsel was removed from the case after it came to light that she was suspended indefinitely from the practice of law. (R. 25).

seeks on four of his six requests for relief as the first four items "are certainly moot as I am unable to now stay the trial, dismiss the indictment, or release him."[2] (R. 13, PageID# 1025).

On July 6, 2020, Respondents filed their Return of Writ. (R. 17). Petitioner filed a *pro se* Traverse on May 24, 2021. (R. 27), to which Respondents did not file a reply. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2 and a reassignment on November 23, 2020. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

In addition, Petitioner has filed a motion (R. 28) for a hearing to show cause, to compel a supplemental record, and for leave to supplement Petitioner's Traverse (R. 27) thereafter. The

---

[2] Petitioner sought the following relief in his petition:

> 1. Issue an order staying Petitioner's third trial on the same one-count Indictment exposing him to Double Jeopardy (actually triple jeopardy), pending the decision on this *Petition*;

> 2. Vacate and dismiss the same pending one-count Indictment, with prejudice, pursuant to the Court's authority under 28 U.S.C. §2106 and its supervisory powers;

> 3. Bar the State of Ohio from charging and trying Petitioner for yet a third time for any and all alleged offenses arising from the same incident alleged in the State's one-count Indictment currently pending in the Medina County Court of Common Pleas for the past nine years;

> 4. Order the complete and unfettered release of the Petitioner, with full return of his bond;

> 5. Order that Petitioner's record(s) be expunged to remove any and all references to his unlawful false arrest, unconstitutional convictions, and subsequent imprisonment in any and all local, State of Ohio, and federal databases; and

> 6. Provide such other and further relief as the Court deems necessary, just, and proper.

(R. 1-2, PageID# 124-125).

undersigned considers and DENIES the motion (R. 28) in its entirety *infra* in section V.

## I.  Summary of Facts

Petitioner did not appeal his conviction after his third trial. As background, the Ninth District Court of Appeals ("state appellate court") made the following factual determinations after Hartman's direct appeal from his *second* conviction:

{¶ 2} On May 27, 2009, Mr. Hartman was having dinner with his wife, Melissa Hartman, and their children. During the course of the meal, Mr. and Mrs. Hartman began to argue about whether Mr. Hartman should have another beer. The argument continued as Mr. Hartman drove the family to his parents' home. During the drive, the argument became more heated and physical. When they reached Mr. Hartman's parents' home, Mr. Hartman exited the vehicle and threw the keys. Mrs. Hartman retrieved the keys and drove to the nearby home of Kimberly and Al Leighton who were long-time friends of Mr. and Mrs. Hartman. In the past, Mr. Hartman often hunted with Mr. Leighton on Mr. Leighton's and other nearby properties. Upon arrival at the Leighton's, Mrs. Hartman and the children were upset, and Mrs. Hartman maintained that Mr. Hartman was after her. Shortly thereafter, Mr. Hartman arrived at the Leighton's home on an ATV. Mr. Hartman had a gun in a holster strapped across his chest. Upon seeing Mr. Hartman, and seeing Mrs. Hartman's reaction to seeing Mr. Hartman, Mr. Leighton ushered his wife and Mrs. Hartman and the children into the Leighton's bedroom. Mr. Leighton told his wife to call 911, which she did.

{¶ 3} Mr. Hartman entered the Leighton home. Mr. Leighton encountered Mr. Hartman as Mr. Leighton was exiting the bedroom. Mr. Leighton pointed a gun at Mr. Hartman and told him that, "this isn't going to happen in my house." The two went outside, Mr. Leighton took the gun from Mr. Hartman and unloaded it, and then they began to talk. At one point, Mr. Leighton allowed Mr. Hartman to go inside and attempt to talk to his wife and get a beer. Before Mr. Hartman went to leave, Mr. Leighton returned the unloaded weapon to Mr. Hartman. As Mr. Hartman got on his ATV, police, who had been observing the two talking from a nearby property, arrested Mr. Hartman.

{¶ 4} Based upon that incident, Mr. Hartman was indicted on one count of aggravated burglary in violation of R.C. 2911.11(A)(2), a first-degree felony. Mr. Hartman filed a motion to suppress which was orally denied following a hearing. The matter proceeded to a jury trial, after which, a jury found Mr. Hartman guilty of aggravated burglary. The trial court sentenced Mr. Hartman to five years in prison. Mr. Hartman appealed, and this Court reversed his conviction based upon the prejudicial admission of the entire 911 call. *See State v. Hartman*, 9th Dist. Medina Nos. 10CA0026-M, 10CA0031-M, 2012-Ohio-745, ¶ 29. Subsequently,

> Mr. Hartman was retried, and a jury again found him guilty of aggravated
> burglary. Mr. Hartman was again sentenced to five years in prison. Mr. Hartman
> has appealed, raising 18 assignments of error for our review, which will be
> addressed out of sequence to facilitate our review.

*State v. Hartman* ("*Hartman II*"), 2013-Ohio-4407, 2013 WL 5532680 (Ohio Ct. App. Oct. 7,

2013).

## II. Relevant Procedural History[3]

### A. Indictment

On June 2, 2009, during its September of 2015 term, a Medina County Grand Jury returned

a one-count indictment against Petitioner charging him with aggravated burglary in violation of

Ohio Revised Code (O.R.C.) § 2911.11(A)(2). (R. 17-1, PageID# 1078).

### B. First Conviction Proceedings

#### 1. Trial and Pretrial Proceedings

On July 30, 2009, Hartman filed a motion to suppress, and a hearing was held on

September 25, 2009. (R. 17-3, PageID# 1417-1702). The trial court orally overruled the motion.

(R. 17-3, PageID# 1731).

On November 9, 2009, a jury trial ensued after which the jury returned a guilty verdict on

the charge of aggravated burglary in violation of O.R.C. § 2911.11(A)(2). (R. 17-2, PageID#

1118). A motion for acquittal pursuant to Ohio Crim. R. 29 was overruled. Sentencing was set

for November 30, 2009. *Id*.

On January 29, 2010, Petitioner was sentenced to a five-year prison term with mandatory

post release control. (R. 17-2, PageID# 1174-1175).

---

[3] The court does not attempt to reproduce in its entirety the long and extenuating history of this
case through its three trials and multiple appeals. It focuses on those state court proceedings that
have some remote relevance to the live issues raised by the petition.

### 2.  First Direct Appeal

On April 1, 2011, Hartman, through new counsel, filed his appellate brief raising seven

assignments of error:

> I. The trial court erred when, over defense objections, it admitted other acts
> testimony in violation of R.C. 2945.59, Evid. R. 404(b), and Mr. Hartman's rights
> under Article I, Section 16 of the Ohio constitution and the Fourteenth
> Amendment to the United States Constitution.
>
> II. State misconduct during Appellant's trial denied his rights under the Fifth,
> Sixth and Fourteenth Amendments to the United States Constitution.
>
> III. The Appellant was denied due process and equal protection of law when the
> court permitted the prosecutor to select the required underlying offense(s)
> necessary for a conviction for the offense of aggravated burglary pursuant to R.C.
> 2911.11 in absence of presentation to the grand jury.
>
> IV. The failure to instruct the jury on the lesser included offense of trespass
> denied the appellant his federal and state constitutional rights to trial by jury and
> due process guaranteed by the Sixth and Fourteenth Amendments as well
> as by Article I, Section 10 of the Ohio Constitution.
>
> V. The lower court erred and denied the appellant due process of law and a fair
> trial when it permitted the jury to hear an unredacted 911 tape containing
> inadmissible hearsay and highly inflammatory 'other acts' and anti-character
> evidence.
>
> VI. The lower court erred and denied the appellant his Sixth Amendment right to
> confrontation when it improperly limited cross-examination of State's witnesses.
>
> VII. The trial court erred in failing to grant the Appellant's motion for new trial.

(R. 17-5, PageID# 3015).

On February 27, 2012, the state appellate court overruled the first, third, and fourth

assignments of error, while designating the second and seventh assignments of error as moot.

*State v. Hartman* ("*Hartman I*"), 2012-Ohio-745, 2012 WL 603994 (Ohio Ct. App. Feb. 27,

2012). However, the appellate court sustained the fifth assignment of error finding the playing of

the unredacted 911 call was inflammatory. *Id*.

The docket bears no indication that Petitioner appealed the state appellate court's decision to the Ohio Supreme Court. (R. 1-4, PageID# 146-153).

**C.  Second Conviction Proceedings**

**1. Trial and Pretrial Proceedings**

On May 18, 2012, after a jury trial, Hartman was again convicted of aggravated burglary. (R. 17-11, PageID# 4984-4986, 4993; Tr. 1211-1213, 1220).

On May 24, 2012, Hartman filed a motion for acquittal, motion for new trial, motion for arrest of judgment, motion for suspension of execution of sentence, and a motion for bail pending appeal. (R. 17-6, PageID# 3599). The court denied them all the following day.[4] The court sentenced Hartman to five years in prison with credit for time served or spent in jail. (R. 17-11, PageID# 5033-5034; Tr. 1260-1261).

**2. Direct Appeal from Second Conviction**

On June 21, 2012, Petitioner, through trial counsel, filed a notice of appeal. (R. 17-6, PageID# 3618).

On November 5, 2012, Petitioner raised the following eighteen assignments of error on direct appeal after his prior brief was stricken for exceeding page limitations:

> I. The trial court committed reversible error in ordering Melissa Hartman to testify in violation of the spousal competency privilege, in failing to quash her subpoena, and in failing to enforce the protective order.
>
> II. The court committed reversible error by finding that Melissa Hartman was a "victim" of an alleged aggravated burglary of another's residence, which is a crime against property, not a crime against a person.

---

[4]  Medina County Online Docket: http://www.co.medina.oh.us/medct_epublicnodr/Pages/DocumentView.aspx?w=1&c=09CR0229 &cp=1&act=198 (last accessed July 30, 2021).

III. The court committed reversible error in holding that the "law of the case" dictated that the court find Melissa Hartman had waived the spousal competency privilege, when the transcripts from the first trial were under investigation, when the initial trial court had not properly advised Melissa Hartman regarding the spousal competency privilege, and when the records of both trials confirm her assertions, not waiver, of her privilege.

IV. The trial court committed reversible error by permitting highly prejudicial hearsay regarding a purported remark of a six-year old, who was not competent to testify and was not a trial witness.

V. The trial court committed reversible error by denying Hartman's motion to continue the trial, forcing him to trial without receiving requested and necessary discovery and before resolving issues concerning the tampering with the transcripts of Hartman's first trial and their impact on his second trial.

VI. The trial court committed reversible error and violated Hartman's constitutional rights against double jeopardy by subjecting Hartman to a second trial on charges for which the jury at the first trial had acquitted him.

VII. The trial court committed reversible double jeopardy error by subjecting Hartman to a second trial, when the State, during the first trial, failed to prove that a firearm was operable and should not have been given a second chance to prove this essential element.

VIII. The trial court committed reversible error by refusing to instruct the jury on the lesser-included offense of criminal trespass, which the evidence supported.

IX. The trial court committed reversible error by failing to require a unanimous verdict on the underlying intended offense supporting the aggravated burglary charge, thereby allowing conviction on previously acquitted elements.

X. The court committed reversible error by admitting and failing to suppress evidence obtained in violation of Hartman's constitutional rights under the Fourth, Fifth, and Sixth Amendments, in that the evidence was the product of an unlawful arrest and detention because the deputies never submitted or swore to a probable cause affidavit.

XI. The court committed reversible error in permitting the State to make repeated references to uncharged acts, in violation of Evidence Rule 404(b).

XII. The court committed reversible error in permitting the state to cross-examine a fact witness regarding unproved and uncharged acts, in violation of Evidence Rules 404(a) and 403, and by denying Hartman's requested jury instructions.

XIII. Despite previous warnings from this appellate court in *Hartman I*, the State committed reversible error by repeated acts of prosecutorial misconduct that pervaded the entire trial and again denied Hartman a fair trial, by asserting facts the evidence contradicted, denigrating Hartman and his defense counsel, and asserting personal opinions.

XIV. The trial court erred by permitting Kim Leighton to testify to matters for which she had no personal knowledge, including by permitting the jury to hear the recording of Kim Leighton's 911 call, containing admittedly false "information," without proper limiting instructions, and without conducting a balancing test, all in violation of the hearsay rule and over Hartman's objections.

XV. The trial court erred by refusing to instruct the jury that Hartman was on trial only for one count of aggravated burglary and not on trial for any other purported offense.

XVI. The trial court erred by forcing Hartman to trial before the previous Trial's transcripts had been corrected, thereby depriving Hartman of his Sixth Amendment right to cross-examine witnesses against him and his right to application of accurate "law of the case."

XVII. The jury verdict was against the manifest weight of the evidence; the trial court erred by failing to grant Hartman's motions for judgment of acquittal and by failing to grant Hartman's motion for a new trial.

XVIII. The trial court erred by imposing a sentence of five years on a first felony conviction, contrary to the Ohio Revised Code, without any findings why the three years Hartman had already served was not sufficient, and where the evidence showed conduct far less serious, not more serious, than the average conduct for the charged offense.

(R. 17-12, PageID# 5125-5053).

On October 7, 2013, the state appellate court sustained the thirteenth assignment of error, finding the prosecutor's improper remarks prejudicially affected the appellant. *Hartman II*, 2013-Ohio-4407 at ¶25. The court found assignments of error seven and ten barred by either *res judicata* or law of the case. It also overruled Hartman's double jeopardy argument in his sixth assignment of error and the seventeenth assignment of error arguing his conviction was against the manifest weight of the evidence. 2013-Ohio-4407 at ¶¶8, 10, 14. The court declined to

address the remaining assignments of error, designating them moot. 2013-Ohio-4407 at ¶33.

On October 17, 2013, Hartman filed a motion for consideration regarding his tenth assignment of error concerning a suppression argument that he believes he preserved.[5]  The state appellate court found no obvious error, reiterating its finding that Hartman did raise any suppression issue in his first direct appeal.[6]

On January 17, 2014, Hartman filed a notice of appeal with the Supreme Court of Ohio.

On May 14, 2014, the Ohio Supreme Court decided not to accept the discretionary and cross-appeals filed. *State v. Hartman*, 2014-Ohio-2021, 138 Ohio St. 3d 1493, 8 N.E.3d 963 (Ohio 2014).

### 3. Petition to Vacate or set Aside Judgment

On February 11, 2013, while Hartman's direct appeal from his second trial was pending, Hartman's mother filed a petition to vacate or set aside judgment of conviction on his behalf.[7]

On February 24, 2014, the trial court denied the petition as not properly before the court. *State v. Hartman*, 2014-Ohio-2226 at ¶4, 2014 WL 2195039 (Ohio Ct. App. May 27, 2014).

On March 13, 2013, Hartman filed a notice of appeal. On May 13, 2013, Hartman, through his trial counsel, raised the following assignments of error:

> I. The trial court erred by dismissing on procedural and jurisdictional grounds Mr. Hartman's unopposed February 11, 2013 *pro se* petition for post-conviction relief ("Trial II petition"), brought under R.C. 2953.21, and thus violated the protections

---

[5] Medina County Online Docket:
http://www.co.medina.oh.us/medct_epublicnodr/Pages/DocumentView.aspx?w=1&c=12CA0057-M&cp=1&act=53 (last accessed July 29, 2021).

[6] Medina County Online Docket:
http://www.co.medina.oh.us/medct_epublicnodr/Pages/DocumentView.aspx?w=1&c=12CA0057-M&cp=1&act=61 (last accessed July 29, 2021).

[7] Medina County Online Docket:
http://www.co.medina.oh.us/medct_epublicnodr/Pages/DocumentView.aspx?w=1&c=09CR0229&cp=1&act=218 (last accessed July 29, 2021).

accorded by Article 1, Section 16 of the Constitution of the State of Ohio and the Fourteenth Amendment to the United States Constitution.

II. The trial court erred by denying Hartman's *Trial II petition*, when presented with the facts that Mr. Hartman had been unlawfully imprisoned by the State of Ohio at the Richland Correctional Institution without due process of law, contrary to R.C. 2953.13 and R.C. 2905.01(b)(2), for a period of thirty days after his conviction had been reversed and remanded, thus depriving Mr. Hartman of equal protection of law provided by Article 1, Section 16 of the Constitution of the State of Ohio and the Fifth and Fourteenth Amendments to the United States Constitution.

III. The trial court erred by denying Mr. Hartman's *Trial I petition* and *Trial II petition* when it did not consider the issues set out in his initial *Petition for Post-Conviction Relief* ("*Trial I petition*"), timely filed on June 29, 2011, and *Trial II petition*, timely filed on February 11, 2013, provided by R.C. 2953.21, in violation of Article 1, Section 16 of the Constitution of the State of Ohio and the Fifth and Fourteenth Amendments to the United States Constitution.

IV. The trial court erred by denying Mr. Hartman's instant *Trial II petition* when it denied him a timely ruling on his June 29, 2011 *Petition for Post-Conviction Relief*, *Trial I petition*, contrary to Ohio Crim. R. 1 and 35(c), thus denying him the protections accorded by Article 1, Section 16 of the Constitution of the State of Ohio and the Fifth and Fourteenth Amendments to the United States Constitution.

V. The trial court committed reversible error by proceeding with a second trial, after failing to consider and timely rule on Mr. Hartman's June 29, 2011 petition for post-conviction relief, *Trial I petition*, which, along with his *Motion to Bar Successive Prosecution of Defendant in Violation of the Fifth Amendment's Double Jeopardy Clause*, presented incontrovertible evidence that the state failed to prove an essential element of the offense of aggravated burglary at Trial I, thus erroneously exposing him to double jeopardy, proscribed by Section 10, Article 1 of the Ohio Constitution as well as the Fifth and Fourteenth Amendments to the United States Constitution.

VI. The trial court committed reversible error when it deprived Mr. Hartman of notice and the opportunity to be heard in the matter of a letter, undisclosed by the Trial II court, that contained false and fraudulent allegations, directed at Mr. Hartman's trial counsel and investigator, composed and sent to the Trial II court by adverse parties in unrelated civil litigation in the United States District Court for the Southern District of Indiana, causing prejudice against Mr. Hartman, his trial counsel, and his investigator by the Trial II court, thus depriving Mr. Hartman of guarantees accorded by Article 1, Section 16 of the Constitution of the State of Ohio and the Sixth and Fourteenth Amendments to the United

States Constitution.

(R. 17-13, PageID# 5238-5239).

On May 27, 2014, the state appellate court overruled Hartman's assignments of error,

finding it was "proper for the trial court to refrain from entertaining the merits of the petition"

that was filed by Hartman's mother, a non-lawyer. *Id.*

On October 22, 2014, the Ohio Supreme Court did not accept the appeal for review. *State v.*

*Hartman*, 140 Ohio St.3d 1467, 18 N.E.3d 446 (Table), 2014-Ohio-4629 (Ohio 2014).

**D.    Third Conviction Proceedings**[8]

**1.    Pretrial Double Jeopardy Motion(s)**

On June 2, 2014, Hartman filed a motion seeking dismissal of his case on the grounds that

it violated the Double Jeopardy Clause.

On November 10, 2014, Hartman filed a motion seeking dismissal with prejudice on the

grounds of prosecutorial misconduct and judicial bad faith.

On October 23, 2015, the trial court denied the above motions, as well as another requesting

a second suppression hearing, finding the court cannot reconsider issues decided on appeal.[9]

On October 26, 2015, Hartman, through counsel, filed a notice of appeal challenging the

trial court's October 23, 2015 Order denying the following motions: (1) Motion to Dismiss on

---

[8] Notably, prior to the third trial, the Medina County Prosecutor filed a motion requesting that the trial court appoint the Cuyahoga County Prosecutor as a special prosecutor in this case, which the trial court granted. Further, the trial judge recused himself and the Supreme Court of Ohio subsequently assigned a third judge to the case. *State v. Hartman* ("*Hartman III*"), 2017-Ohio-1089 at ¶5, 2017 WL 1148609 (Ohio Ct. App. Mar. 27, 2017).

[9] Medina County Online Docket: http://www.co.medina.oh.us/medct_epublicnodr/Pages/DocumentView.aspx?w=1&c=09CR0229&cp=1&act=297 (last accessed July 30, 2021).

the Grounds of Prosecutorial and Judicial Bad Faith and Misconduct; and (2) Motion to Enforce Defendant's Fifth Amendment Protections Accorded by the Double Jeopardy Clause. (R. 17-15, PageID# 6517).

On March 27, 2017, the state appellate court found that: (1) the trial court did not err in denying Hartman's first motion to dismiss on the basis of judicial and prosecutorial misconduct; (2) Hartman's double jeopardy argument that the State failed to prove essential elements of aggravated burglary during both the first and second trials was precluded from the court's consideration by the doctrine of *res judicata*; and (3) it was without jurisdiction to address Hartman's argument that transcripts had been deliberately altered by the court reporter, which could be raised after trial on direct appeal. *Hartman III*, 2017-Ohio-1089 at ¶¶14-29.

On May 11, 2017, Hartman filed a Notice of Appeal with the Supreme Court of Ohio.[10]

On December 6, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac. R. 7.08(B)(4). (R. 17-16, PageID# 6824).

## 2. Other State Court Filings

On May 1, 2018, Hartman filed a motion *in limine* concerning the third element of aggravated burglary, "with purpose to commit any criminal offense," and seeking to limit the State to only disorderly conduct based upon double jeopardy principles.[11]

On June 27, 2018, the trial court denied the motion finding that this issue is controlled by the doctrine of the law of the case, as neither of Hartman's first two convictions were reversed

---

[10]  Medina County Online Docket:
http://co.medina.oh.us/medct_epublicnodr/Pages/DocumentView.aspx?w=1&c=15CA0090-M&cp=1&act=58 (last visited July 28, 2021).
[11]  Medina County Online Docket:
http://co.medina.oh.us/medct_epublicnodr/Pages/DocumentView.aspx?w=1&c=09CR0229&cp=1&act=323 (last accessed July 28, 2021).

for lack of sufficient evidence and "Hartman is attempting to re-litigate issues from *Hartman I*

and *Hartman II* that either were raised or could have and should have been raised previously."

*Id*.

### 3. Trial

On October 5, 2018, the trial court denied Hartman's motion for a mistrial.[12] (R. 17-17,

PageID# 6825-6830).

On October 5, 2018, a jury found Hartman guilty of the lesser included offense of criminal

trespass, and could not reach an agreement on the charge of aggravated burglary. (R. 17-17,

PageID# 6831-6832). Hartman was sentenced to thirty days in jail, but was credited for time

already served in excess of that amount. *Id*.

### 4. Direct Appeal

At sentencing, Hartman was advised of his right to appeal his conviction. *Id*. There is no

indication that Hartman filed any direct appeal after his trespassing conviction from his third

trial.

### E . Federal Habeas Petition

Hartman, through counsel, filed the instant petition for a writ of habeas corpus asserting the

following grounds for relief:

> **GROUND ONE**: Violation of Double Jeopardy Clause; State tried Petitioner at
> Trial II on the same 5 alternative means tried in Trial I, where the jury in Trial I
> expressly acquitted Petitioner of 4 of the 5 alternative means. State now proposes

---

[12]  The trial court explained that during the third trial, Hartman moved for a mistrial twice. The
first motion was based on the admission of a heavily *redacted* version of the 911 call placed by
Ms. Leighton—the admission of the same *unredacted* 911 call led to the reversal of Hartman's
first conviction. The court found that all of the objectionable portions of the call identified by
the state appellate court were redacted prior to being played for the jury and denied the motion. The
second motion was based on the court's denial of Hartman introducing a video of his father
discharging weapons that were unrelated to the case. The court also denied this motion.

to try Petitioner on the same one-count indictment in Trial III intending to try
Petitioner on the same alternative means of which he had been previously
acquitted and retried a second time.

**GROUND TWO**: Trial III judge disregarded the precedent in *State v. Daugherty*,
41 Ohio App[.] 3d 91 (1987) establishing minimum standards of conduct for
prosecuting attorneys, the violation of such standards of conduct warrant the
dismissal of the indictment, thus depriving Petitioner of his protections of the
Fifth Amendment's Double Jeopardy Clause[.]

**GROUND THREE**: Trial II judge deprived Petitioner of a "clearly defined
method by which [he] may raise claims of federal rights" provided by O.R.C[.]
2953.21 *et seq*., denying Petitioner's Petitions for Post-Conviction Relief contrary
to statute and the Rules of Criminal Procedure, depriving Petitioner of his Fifth
Amendment Double Jeopardy protections he raised in his petitions; further
evidence of deliberate judicial bad faith.

**GROUND FOUR**: The State and the trial courts have engaged in an egregious
pattern of judicial and prosecutorial misconduct and unlawful conduct, denying
Petitioner of [sic] his Constitutional Rights accorded by the Fourth, Fifth, Sixth,
and Fourteenth Amendments. Petitioner urges this Honorable Court to exercise its
supervisory powers and dismiss the one-count indictment in this case, with
prejudice.

(R. 1-1; 1-2 at PageID# 53, 57, 59, 63).[13]

### III. Exhaustion and Procedural Default

Respondent argues that "outside of Hartman's Double Jeopardy argument, which is itself

based primarily on a procedurally-barred sufficiency of the evidence argument, the remaining

arguments in Hartman's habeas petition are procedurally barred." (R. 17, PageID# 1041-1043).

Respondent points out that Hartman never filed a direct appeal after his third trial—the only

conviction that is now before this court. *Id*. Generally, the court agrees.[14] As explained in the

---

[13]  Although Petitioner's brief in support of his petition identifies a fifth ground for relief (R. 1-2,
PageID# 63), the court finds this ground duplicative of Ground Four.

[14]  A petitioner may procedurally default a claim by failing to raise and pursue that claim through
the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848
(1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to
raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130

analysis below, the petition has not actually raised any arguments alleging constitutional violations during his *third* trial, save for the double jeopardy inspired argument that the third trial should never have occurred.

As the Double Jeopardy Clause protects against successive trials under some instances, it is axiomatic that a defendant alleging that a retrial violates the clause would raise such an issue prior to trial, as Hartman did here. Respondent appears to concede that Petitioner took an interlocutory appeal prior to his third trial. Further, the state appellate court, in addressing the appeal, observed that "the Supreme Court of Ohio has carved out a narrow exception … where the criminal defendant [who] asserts that he or she has previously been placed in jeopardy for the offense that is the subject of the new indictment" may challenge the denial of a motion to dismiss, which is generally not considered a final appealable order. *Hartman III*, 2017-Ohio-1089 at ¶11 (limiting its review of the trial court's denial of Hartman's motion to dismiss to the double jeopardy issue(s) raised therein). Without deciding the matter, a reasonable argument can be made that Hartman has exhausted his double jeopardy claims.

Nevertheless, a district court is not obligated to resolve the procedural default issue, and

---

(1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*. Recently, the Sixth Circuit has reiterated that "[f]or a federal court to reach the merits of a habeas petitioner's claim, he must first present the claim to each level of the state courts, including the highest court to which he is entitled to appeal." *Rasul v. Gray*, No. 19-4073, 2020 U.S. App. LEXIS 5888, at *5-6 (6th Cir. Feb. 26, 2020) (citing *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012)).

may in its discretion decide the petition on the merits. *See, e.g., Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *See Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015) (observing that judicial economy may favor addressing the merits rather than seeking to resolve complicated issues of state law); *accord Pritchett v. Berghuis*, 2016 U.S. Dist. LEXIS 165947 at n. 2 (W.D. Mich. Nov. 5, 2016) (observing that both the Supreme Court and the Sixth Circuit have indicated that a district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim in order to promote expediency); *see also Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Swanigan v. Sherry*, 502 Fed. App'x 544, 546 (6th Cir. 2012).

As such, the court proceeds to address Petitioner's double jeopardy claims on the merits.

### IV.   Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. A federal district court, however, may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

A.      **Availability of Relief**

This petition is before this court in a rather unusual procedural posture. The habeas petition was filed prior to the Petitioner's third trial and conviction, seeking to prevent the third

trial from taking place. As stated above, the court denied that relief and Petitioner was subsequently convicted. The petition was converted by the court into a § 2254 petition. However, Petitioner, even while represented by counsel, never sought to amend the Petition to challenge anything that transpired during his third trial. Petitioner also never instituted any state court appeals following his third trial and conviction. Thus, as stated above, any claims stemming from any perceived deficiencies occurring at his third trial are unexhausted.

Therefore, the only arguably live issue is whether Petitioner was subjected to Double Jeopardy simply by being subjected to a third trial. Indeed, it is the only issue on which this court could provide relief, as the convictions ensuing after the first two trials were both overturned. "[F]ederal habeas relief related to the overturned conviction and sentence is inappropriate." *Hudson v. Russell*, 2014 WL 1831042, at *5 (W.D. Mo. May 8, 2014). Nevertheless, a federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, … [which] includes the ability to order the state to expunge a conviction." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010). Thus, if the court were to find that Petitioner's constitutional rights were violated by the mere fact of a third trial occurring, some relief in the form an expungement is theoretically available.

Petitioner has also made numerous references to alleged prosecutorial misconduct occurring during his first and second—but not third—trials. As the first two convictions were overturned, Petitioner cannot claim that his current conviction, the only conviction ripe for this court's consideration, is the product of prosecutorial misconduct. Therefore, the court will consider Petitioner's argument that misconduct at Petitioner's second trial precluded a third trial on double jeopardy grounds.

**B. Double Jeopardy**

18

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Supreme Court has ruled that the Double Jeopardy Clause "protects against multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (internal quotation marks and citations omitted).

> [The Double Jeopardy] clause is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).   The Due Process Clause affords a criminal defendant three basic protections: (1) protection from a second prosecution of the same offense following acquittal; (2) protection from a second prosecution of the same offense following conviction; and (3) protection from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)).

*Galvan v. Prelesnik*, 588 Fed. App'x 398, 401 (6th Cir. 2014). It is firmly established that "the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment." *Benton v. Maryland*, 395 U.S. 784, 794 (1969). Nevertheless, it is clearly established that "[t]he Double Jeopardy Clause is not an absolute bar to successive trials. The general rule is that the Clause does not bar reprosecution of a defendant whose conviction is overturned on appeal." *Justices of Bos. Mun. Court v. Lydon*, 466 U.S. 294, 308, 104 S. Ct. 1805, 1813 (1984).[15]

---

[15] The justification for this rule was explained in *United States v. Tateo*, 377 U.S. 463, 466 (1964), as follows:

> While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one

Petitioner has presented two separate theories asserting that a violation of the Double Jeopardy Clause has occurred. Each will be discussed in turn.

**1. "Acquitted Conduct"**

One of Petitioner's theories is that his conviction violates the first basic protection—a second and even third prosecution following acquittal. Petitioner, however, was never acquitted of *any* charges at his first or even second trial. Rather, he was convicted at both of the only offense with which he was charged—aggravated burglary. Under Ohio law, aggravated burglary requires the following under the section with which Petitioner was charged and convicted.

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, *with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense*, if any of the following apply:
>
> \*\*\*
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

O.R.C. § 2911.11(A)(2) (emphasis added).

Petitioner's claim revolves around the italicized language above, namely the additional criminal offense that he ostensibly had the purpose to commit. (R. 1-2. PageID# 54). At the conclusion of his first the jury trial, the jury returned a special verdict form where it was asked, in association with the aggravated burglary charge, to "circle the offense(s), if any, you unanimously find the defendant had the purpose to commit beyond a reasonable doubt." (R. 1-2,

---

whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.

PageID# 830; APX 676). Five options were provided on the verdict form: (1) aggravated

menacing; (2) menacing; (3) assault; (4) domestic violence; and (5) disorderly conduct. *Id*. Only

disorderly conduct was circled. *Id*. Thus, Petitioner argues, he was "acquitted" of the intent to

commit the other four. (R. 1-2, PageID# 54-57). The state appellate court addressed this

argument as follows:

> {¶ 11} Mr. Hartman asserts in his sixth assignment of error that his second trial
> violated his right against double jeopardy because he was subjected to trial for
> charges for which he was previously acquitted. Specifically, Mr. Hartman
> maintains that, in the process of finding Mr. Hartman guilty of aggravated
> burglary in the first trial, because the jury concluded (via a special verdict form)
> that Mr. Hartman intended to commit disorderly conduct inside the Leighton
> residence, and made no other findings, that it implicitly acquitted him of the other
> crimes the State asserted that Mr. Hartman intended to commit in the residence.
> We do not agree.

> {¶ 12} The only charge Mr. Hartman faced upon retrial was for aggravated
> burglary. Mr. Hartman was never acquitted of that charge. Instead, a jury found
> Mr. Hartman guilty of aggravated burglary following his first and second
> trials. Thus, there have been no charges that Mr. Hartman was once acquitted of
> and then subsequently retried. Further, we explained above why Mr. Hartman's
> second trial for aggravated burglary did not violate the general principles
> involving double jeopardy.

> {¶ 13} Mr. Hartman attempts to analogize his situation to situations involving
> lesser included offenses. In cases involving lesser included offenses, a conviction
> on a lesser included offense will normally operate as an acquittal of the greater
> offense, thereby barring a retrial of the greater offense. *See State v. Edmonson*, 92
> Ohio St.3d 393, 395 (2001), citing *Brown v. Ohio*, 432 U.S. 161 (1977). Thus, in
> those situations, the defendant is implicitly acquitted of the greater offense. We
> cannot say that Mr. Hartman's situation is analogous. Mr. Hartman's situation
> does not involve lesser included offenses; instead, it involves alternate theories
> concerning one element of the charged offense. We reiterate that the trier or fact
> did not implicitly or explicitly acquit Mr. Hartman of the only offense for which
> he was indicted.

> {¶ 14} Mr. Hartman points to the special verdict form from the first trial that
> listed five offenses and asked the jury to "circle the offense(s), if any, you
> unanimously find the defendant had the purpose to commit beyond a reasonable
> doubt[.]" The jury only circled disorderly conduct. Thus, Mr. Hartman asserts that
> the jury "acquitted" him of the other listed offenses, and the State could only retry

21

Mr. Hartman for aggravated burglary under the theory that he intended to commit disorderly conduct. At best, Mr. Hartman's assertion is actually a claim that he was implicitly "acquitted" of four means or theories underlying how one element of aggravated burglary was satisfied. Aside from arguments in Mr. Hartman's seventh assignment of error, he does not generally assert that the State was barred from retrying Mr. Hartman for aggravated burglary. Mr. Hartman has not provided this Court with any case law supporting the idea that double jeopardy impacts how a State may retry a defendant for a crime that the State is permitted to re-prosecute. The Double Jeopardy Clause bars "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Gustafson*, 76 Ohio St.3d at 432. Mr. Hartman was only ever prosecuted for aggravated burglary, and we explained above why Mr. Hartman's second prosecution for aggravated burglary following a conviction for that same offense did not violate double jeopardy. The jury was charged with the task of reaching a verdict concerning the charge of aggravated burglary—its determination of the means by which it concluded the offense was committed is not tantamount to reaching a separate "verdict" to which double jeopardy attaches. Based upon Mr. Hartman's argument and the law he has submitted in support of that argument, we see no merit in it. Mr. Hartman's sixth assignment of error is overruled.

*Hartman II*, 2013-Ohio-4407 at ¶¶11-14.

Petitioner's argument on this theory is conspicuously devoid of any clearly established Supreme Court precedent. As alluded to, Petitioner was not acquitted of any *charges* at either his first or second trial. Instead, underpinning Petitioner's argument is the notion that he was acquitted of certain *conduct* at the first trial—that conduct being that he had the purpose of committing the first four crimes identified. Petitioner's argument is essentially one of issue preclusion, which finds some limited support in *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). The *Ashe* court found the doctrine of collateral estoppel had some applicability in the double jeopardy context. The *Ashe* court explained that collateral estoppel "stands for an extremely important principle in our adversary system of justice ... that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same

parties in any future lawsuit." *Id*. at 443 (noting that the principle of collateral estoppel had been an established rule of federal criminal law for at least fifty years).

In *Ashe*, the Court determined that a defendant, who had been *acquitted of the offense* armed robbery of one poker player, could not be subsequently tried for robbing another player at that same game where the only reasonable inference is that the jury determined the defendant was not one of the robbers.[16] *Id*. at 445. Because there was a reasonable doubt that the defendant had been one of the robbers, another trial would be precluded by collateral estoppel. *Id*. Thus, the holding of *Ashe* protects against a prosecution for another offense that requires proof of a fact found in favor of an accused in a prior proceeding.

Nevertheless, "the burden [is] on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350 (1990); *see also Grady v. Corbin*, 495 U.S. 508, 510 (1990) (holding that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted."); *but see Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019) ("a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under a federal statute.")

---

[16] In *Ashe*, given the underlying facts, the Court reasoned that the "the record is utterly devoid of any indication that the first jury could rationally have found that an armed robbery had not occurred, or that Knight had not been a victim of that robbery. The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers. And the jury by its verdict found that he had not." 397 U.S. at 445.

While at least four Supreme Court justices appear to question the rectitude of the *Ashe* decision,[17] it is indisputable that *Ashe* has limited application. After *Ashe*, the Supreme Court's *Dowling* decision held that the introduction of evidence against the defendant—relating to a separate crime of which he had previously been acquitted of committing—did not violate the Double Jeopardy or Due Process Clauses of the Constitution where he was charged with a different offense. 493 U.S. 342. The Supreme Court itself has found issue preclusion under *Ashe* only three other times. *See Langley v. Prince*, 926 F.3d 145, 157-158 (5th Cir. 2019) (observing that the Supreme Court has found issue preclusion under *Ashe* only three occasions).[18] In Langley, the Fifth Circuit Court of Appeals specifically "asked the parties to identify any case extending *Ashe* to cases involving a conviction. The parties could not find a single Supreme Court case even hinting at that result." *Id*. at 158. Hartman, despite the Supreme Court's admonition in *Dowling* that the burden is on the defendant to demonstrate that an issue's relitigation is barred by a prior proceeding, also fails to identify any case law extending *Ashe* to cases where a defendant was not acquitted of any offenses but rather convicted. In *Currier*, 138 S. Ct. at 2150, the Supreme Court " acknowledge[d] that *Ashe*'s protections apply only to trials following acquittals …." *Accord Langley*, 926 F.3d at 158 (finding there is "no clearly established Federal law, as determined by the Supreme Court, explaining whether and to what

---

[17] In Part III of *Currier v. Virginia*, Justices Gorsuch, Roberts, Thomas, and Alito observed that "[e]ven at the outer reaches of our double jeopardy jurisprudence … this Court has never sought to regulate the retrial of issues or evidence in the name of the Double Jeopardy Clause" and concluded that "civil preclusion principles and double jeopardy are different doctrines, with different histories, serving different purposes." 138 S. Ct. 2144, 2154, 2156 (2018).

[18] *See Turner v. Arkansas*, 407 U.S. 366, 367 (1972) (noting jury returned "a general verdict of acquittal"); *Harris v. Washington*, 404 U.S. 55, 57 (1971) (noting defendant "was acquitted by a jury" on a single charge); *Simpson v. Florida*, 403 U.S. 384 (1971) (noting jury returned a "general" verdict of acquittal). Unlike here where Hartman was twice convicted, none of the four juries in these Supreme Court decisions convicted the defendant of the charged crime.

extent a state court should find issue preclusion following a conviction.") (internal quotation marks omitted).

The court cannot find that the state appellate court, by finding that double jeopardy did not apply because there were no offenses of which Hartman was once acquitted of and then subsequently retried, rendered a decision that was contrary to or involved an unreasonable applicable of clearly established federal law as establish by the Supreme Court of the United States.

Furthermore, assuming for the sake of argument only that *Ashe*'s issue preclusion applies after convictions, Petitioner's argument contains another fatal flaw. Under Ohio law, aggravated burglary charges do not require unanimity of the jury in determining which facts satisfy the element of an offense, specifically which criminal act a defendant had the purpose to commit. In *State v. Gardner*, the Ohio Supreme Court noted that "the question before us is not whether there must be jury unanimity; the question is whether the jurors must agree unanimously as to which criminal offense a defendant intended to commit during a burglary." 2008-Ohio-2787 at ¶37, 118 Ohio St. 3d 420, 889 N.E.2d 995 (Ohio 2008). The *Gardner* court explained that "[a]lthough Crim.R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied." *Id*. at ¶¶38-39, citing *Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999); *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) ("[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict."). The Ohio Supreme Court explained that:

[W]e do not require all jurors to agree whether a defendant raped a victim orally, vaginally, or anally, because all three constitute "sexual conduct" in violation of the rape statute. In such cases, there is no violation of the jury unanimity rule as long as all of the jurors agree that there was sufficient penetration to satisfy the "sexual conduct" element of the crime of rape. *Thompson*, 33 Ohio St.3d at 11, 514 N.E.2d 407. It is no great leap to extend this rationale to the crime of burglary.

*** 

Thus, a defendant charged with burglary is not deprived of a unanimous verdict "simply because the jury was not required to agree unanimously as to the nature of the crime the defendant intended to commit at the time he entered unlawfully into the victim's building. 'In situations where "the alternatives of the *mens rea* [intent] component give rise to the same criminal culpability, it does not appear critical that the jury may have reached different conclusions regarding the nature of the defendant's intent if such differences do not reflect disagreement on the facts pertaining to the defendant's conduct." *State v. Suggs*, 209 Conn. 733, 763, 553 A.2d 1110 (1989).

2008-Ohio-2787 at ¶¶65, 68. Therefore, Hartman's argument—that the special verdict forms resulted in acquittals—is inconsistent with Ohio's interpretation of its own statutes. Because the jurors could agree that Hartman had the purpose to commit a criminal offense without necessarily agreeing as to which offense, the court cannot reasonably construe the special verdict form as affirmatively deciding any issue in Petitioner's favor.

Finally, even if this court were to assume for the sake of argument that Petitioner could not be tried a third time for aggravated burglary except under the same theory that disorderly conduct was the criminal offense that Petitioner had the purpose to commit, Petitioner was not convicted of aggravated burglary, but only trespassing. Petitioner has presented no argument suggesting that the State would have been prohibited from retrying him for trespassing or that he was acquitted of trespassing at either the first or second trial.

**2. Prosecutorial Misconduct**

26

Petitioner contends that the trial judge overseeing his third criminal prosecution as well as the state appellate court erred by "[d]isregard[ing] the precedent in *State v. Daugherty*, 41 Ohio App. 3d 91 (1987), which established minimum standards of conduct for prosecuting attorneys, the violations of which standards of conduct deprived Petitioner of his protections under the Fifth Amendment's Double Jeopardy Clause …." (R. 1-2, PageID# 57).

The state appellate court addressed Hartman's similar argument as follows:

{¶ 14} To the extent that Hartman does raise a double jeopardy argument in his first motion to dismiss, he contends that the Double Jeopardy Clause bars retrials where bad faith conduct by a judge or prosecutor threatens to harass a defendant by means of successive criminal prosecutions. Specifically, Hartman cites to *State v. Daugherty*, 41 Ohio App.3d 91 (5th Dist. 1987), wherein the Fifth District Court of Appeals determined that, under the facts of that specific case, the "accused ha[d] been sufficiently harassed by unlawful government procedure as to invoke the prohibition against unwarranted successive prosecutions within the meaning of the Double Jeopardy Clauses of the federal and state Constitutions." *Id.* at 94, citing *United States v. Dinitz*, 424 U.S. 600 (1976) (holding that the Double Jeopardy Clause bars retrials where bad-faith conduct by a judge or prosecutor threatens to harass a defendant by means of successive prosecutions or a declaration of a mistrial so as to afford the   prosecution a more favorable opportunity to convict).

{¶ 15} We determine that Hartman's reliance upon *Daugherty* and *Dinitz* is misplaced as those cases are distinguishable from the present case. In *Daugherty*, the court of appeals reversed the defendant's conviction for driving under the influence after concluding that the defendant was entitled to a mistrial. Specifically, the *Daugherty* court determined that the Double Jeopardy Clause barred retrial since the defendant had "been sufficiently harassed by unlawful government procedure" where the prosecutor told the jury that evidence existed proving the defendant was not credible, but subsequently failed to introduce such evidence either at trial or at the post-trial hearing on the matter. *Id.*

{¶ 16} *Dinitz*, on the other hand, involved a scenario where a criminal defendant moved to dismiss an indictment on double jeopardy grounds following the declaration of a mistrial in his first trial, but prior to the successive trial. *Dinitz* at 604–605. Although the United States Supreme Court ultimately concluded that retrial did not violate Dinitz's constitutional rights, it did hold that the Double Jeopardy Clause protects "a defendant against governmental actions intended to provoke mistrial requests and thereby subject defendants to the substantial burdens imposed by multiple prosecutions." *Id.* at 611–612.

{¶ 17} Here, however, the trial court did not declare a mistrial in either of Hartman's first two trials, nor did this Court determine that Hartman was entitled to a mistrial in *Hartman I* or *Hartman II*. Rather, a jury found Hartman guilty of aggravated burglary in both trials and this Court subsequently reversed those convictions on direct appeal. The Supreme Court of Ohio has explicitly "refuse[d] to equate, for the purpose of invoking the Double Jeopardy Clause, a declaration of a mistrial to a reversal on appeal." *State v. Liberatore*, 69 Ohio St.2d 583, 590–591 (1982), citing *United States v. Jorn*, 400 U.S. 470, 484 (1971). Moreover, the distinction between reprosecution after an appeal and reprosecution after a mistrial declaration is not negated merely because the prosecutorial misconduct that occurred in Hartman's second trial could have been grounds for a mistrial. *See id*. at 591. This is particularly true in this case because the State did not engage in impermissible closing arguments in order to goad Hartman into requesting a mistrial or to prejudice Hartman's prospects for an acquittal. *See id*., citing *Dinitz* at 611.

{¶ 18} Moreover, the Supreme Court of Ohio has held that " '[i]t is a "venerable principl[e] of double jeopardy jurisprudence" that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, * * * poses no bar to further prosecution on the same charge." ' " *State v. Tillman*, 119 Ohio App.3d 449, 458 (9th Dist. 1997), quoting *Montana v. Hall*, 481 U.S. 400, 402 (1987), quoting *United States v. Scott*, 437 U.S. 82, 90–91 (1978). "A reversal of a judgment in a criminal case merely places the state and the defendant in the same position as they were in before trial." *Liberatore* at 591. In this case, Hartman's conviction in both of the first two trials was not reversed based upon insufficient evidence. Thus, having determined that Hartman's reliance on *Daugherty* and *Dinitz* is misplaced, we conclude that the trial court did not err by denying Hartman's first motion to dismiss on the basis of judicial and prosecutorial misconduct.

*Hartman III*, 2017-Ohio-1089 at ¶¶14-18.

First, *Daugherty* is an Ohio appellate court opinion. Habeas relief is only available where a state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Assuming *arguendo* that the state appellate court's decision in *Hartman III* was inconsistent with a decision from a different state appellate court, federal habeas relief is unavailable.

28

In *Dinitz*, the United States Supreme Court held that "[t]he Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor,' threatens the '(h)arassment of an accused by successive prosecutions **or** declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." 424 U.S. at 611 (internal citations omitted) (emphasis added).

Petitioner's argument concerning *Dinitz* is sparse, save for his assertion that *Hartman III* "refused to read the plain and simple language of *Dinitz* in the disjunctive." (R. 1-2, PageID# 58). As the court understands Petitioner's argument, he appears to take issue with the fact that the state appellate court did not expressly discuss whether there was bad faith conduct by the judge or prosecutor that would threaten him with harassment of successive prosecutions alone— uncoupled from the declaration of a mistrial. The court finds no clear misapplication of clearly established Supreme Court precedent in the state appellate court's decision.

In *Oregon v. Kennedy*, the United States Supreme Court referenced its earlier *Dinitz* decision and recognized the "less than crystal clarity in our cases which deal with this area of the law," and held that "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion … *does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause*." 456 U.S. 667, 675–76, 102 S. Ct. 2083, 2089, 72 L. Ed. 2d 416 (1982). The Supreme Court further explained that:

> Because of the confusion which these varying statements of the standard in question have occasioned in other courts, we deem it best to acknowledge the confusion and its justifiability in the light of these statements from previous

decisions. We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But *we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial*.

*Oregon v. Kennedy*, 456 U.S. at 679 (emphasis added). The state appellate court in *Hartman III*, clearly cognizant of the correct legal standard, concluded that "the State did not engage in impermissible closing arguments in order to goad Hartman into requesting a mistrial or to prejudice Hartman's prospects for an acquittal." 2017-Ohio-1089 at ¶17. Petitioner has not presented any evidence that would allow this court to conclude that the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### V. Other Matters

On May 25, 2021, Petitioner filed a "Motion for a hearing to show cause why Respondents should not be held in contempt for disobeying Court's previous orders to file the complete record," which also moves the court to compel a supplemental record, and for leave to supplement Petitioner's Traverse. (R. 28). Petitioner essentially contends that by failing to file every single document associated with the three trials that have occurred in his case at the state level, Respondent has failed to file a "complete" state court record as ordered by this court on June 19, 2020. (R. 16). Respondent filed a Response to the motion, indicating he "has no objection to supplementing the record with any additional document" that has not yet been filed, but asserts that "outside of listing one specific document, which is actually part of the filed record, Hartman does not identify any particular documents that would support his claim or add anything new." (R. 29, PageID# 7069).

30

The court's prior order stated that "in accordance with Rule 5 of the Rules Governing Section 2254 cases, the Court ORDERS Respondents to file a complete State court record and Answer to the Petition."[19] (R. 16, PageID# 1033). Though not compiled in the most easily accessible manner, the Answer/Return of Writ substantially complies with the court's order and the requirements of the rules. Indeed, Hartman has not filed a reply in support of this motion identifying with specificity which documents are missing from the record and why any missing document is germane to his live grounds for relief or his Traverse. Although the court considered ordering Respondent to supplement the record and correct certain deficiencies, the court finds Petitioner has failed to support his motion, and concludes that further delay in this case is unnecessary. Furthermore, relevant documents the court was unable to locate in the Answer were frequently readily available through the internet. Therefore, the motion (R. 28) for a show cause hearing, to compel a supplemental record, and for leave to supplement Petitioner's Traverse is DENIED.

### VI. Conclusion

It is recommended that Hartman 's Petition be DENIED for the foregoing reasons. As explained herein, it is recommended that the court determine that Petitioner has failed to exhaust any grounds for relief related to any perceived constitutional errors stemming from his third trial.

---

[19] Rule 5(c) of the Rules Governing Section 2254 Cases, which discusses transcripts, states that: "The respondent must attach to the answer parts of the transcript *that the respondent considers relevant*. The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished…." (emphasis added). In addition, Rule 5(d) requires the filing of "any brief that the petitioner submitted in an appellate court contesting the conviction or sentence, or contesting an adverse judgment or order in a post-conviction proceeding" and "the opinions and dispositive orders of the appellate court relating to the conviction or the sentence."

Furthermore, it is recommended that the double jeopardy related grounds for relief, which are at least arguably exhausted, are without merit.

Finally, Petitioner's motion (R.28) for an order to show cause, to compel a supplemental record, and for leave to supplement Petitioner's Traverse is DENIED, for the foregoing reasons.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: September 1, 2021

# OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**